LOUIS M. BUBALA III, ESQ. (SBN #8974)
KAEMPFER CROWELL
50 W. Liberty Street, Suite 700
Reno, Nevada 89501
Telephone: 775.852.3900
Facsimile: 775.327.2011
Email: lbubala@kcnvlaw.com

*Electronically Filed*
*February 7, 2017*

*Attorneys for Chapter 11 Trustee James S. Proctor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>LIFE ENHANCEMENT PRODUCTS, INC.,<br><br>Debtor. | Case No.: BK-N-14-51572-btb<br>Chapter 11<br><br>**TRUSTEE'S MOTION TO SELL ESTATE ASSETS FREE AND CLEAR OF LIENS**<br><br>Hearing Date: March 7, 2017<br>Hearing Time:    2:00 p.m. |

Trustee James S. Proctor ("Trustee") hereby moves the Court (the "Sale Motion") for the entry of an order, pursuant to the provisions of Sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2002 and 6004 as follows: (a) authorizing the Trustee to sell substantially all of the Debtor's assets free and clear of liens, interests and encumbrances (the "Sale") and (b) approving the Sale pursuant to (i) that certain Asset Purchase and Sale Agreement dated as of January 30, 2017 by and among James S. Proctor as the Ch. 11 Trustee of Debtor Life Enhancement Products, Inc. and Sierra Nevada Bioscience, LLC (the "Purchase Agreement," a copy of which is attached as **Exhibit 1**) or a higher and better offer received at the hearing set to consider approval of the sale.[1]

The motion is supported by the Declaration of James S. Proctor (Ct. Dkt. #289). The motion also is supported by the information on business operations and sale opportunities,

---

[1] As of the date of the filing of this motion, Sierra Nevada Bioscience, LLC, has reserved its name with the Nevada Secretary of State but not yet formally organized. The Buyer was represented during the negotiation of the Purchase Agreement by Maupin Cox & LeGoy, P.C.

presented by Mr. Proctor at the status hearing on January 18, 2017 (See Ct. Dkt. #293, Minute Order), attended by Creditor Samuel Kornhauser individually and by counsel. Some of that information is included as part of this motion.

## I.  INTRODUCTION

1. On September 17, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On April 16, 2015, this Court entered an Order that a chapter 11 Trustee be appointed by the U.S. Trustee with all the duties and powers set forth in 11 U.S.C. §§ 1106 and 1108 (Ct. Dkt. #110).

3. On April 17, 2015, Tracy Hope Davis, as United States Trustee for Region 17, including the District of Nevada, filed an Appointment of Trustee and Application for Order Approving Appointment of Trustee with this Court, wherein the United States Trustee appointed James S. Proctor as the Trustee in the above-captioned case (Ct. Dkt. #113). This Court issued its Order Approving US Trustee's Appointment of Chapter 11 Trustee on April 17, 2015 (Ct. Dkt. #115). The Trustee continues to operate the Debtor's business and manage its financial affairs pursuant to Sections 1106(a) and 1108 of the Bankruptcy Code.

4. This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105, 363, and 365 of the Bankruptcy Code.

## II.  FACTUAL BACKGROUND

5. Life Enhancement Products, Inc. ("LEP") manufactures and provides nutritional supplements with unique formulations for general health, memory enhancement, blood sugar maintenance, cognitive enhancement, among others, based on formulations derived from known formulators across the country. The raw materials purchased for the products are derived from the highest-quality, pharmaceutical-grade ingredients and are packaged under clean-room conditions, and materials undergo lab testing to confirm purity. LEP offers its services through direct internet

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

sales to the public or through medical providers.

6. LEP leases commercial real property from Scientific Nutritional Formulations (an insider entity owned primarily by the LEP's majority equity holder, Wallace "Will" Block) at 2555 Business Parkway in Minden, Nevada. The twenty-five (25) year lease provides for monthly rent of $7,000. The estate is current on its post-petition rent obligations. As detailed below, the Trustee seeks to reject this lease with the closing of this proposed sale.

7. The Trustee has actively managed this business to resolve a number of outstanding issues at his appointment. There was only approximately $24,000 in cash in the bank, including $16,000 in customer deposits for backlogged orders. The Trustee, along with the hiring of Andrew Robinson as a business manager for debtor, has implemented numerous changes with payroll, inventory purchasing, product sales and production, formulator agreements and royalty payments, and financial reporting and projections. Many of these details were discussed at the hearing on January 18, 2017, and the Trustee is able provide additional detail as needed.

8. When the Trustee was appointed, Debtor was on the verge of a Chapter 7 liquidation. Following the changes implemented after his appointment, the Trustee has considered three options (1) sell Debtor's assets to another entity seeking to sell nutritional supplements; (2) file a plan of reorganization, leaving pre-petition management in place and hoping for payments from Debtor's post-confirmation operations; or (3) converting the case and liquidating the assets. The Trustee determined a sale was the best option, notwithstanding inevitable constraints on the sales price given Debtor's financial performance and contractual arrangements.

9. The Trustee has marketed the business to those in the industry, those with had had prior involvement and/or interest in the company, individuals suggested by others, including two persons proposed by Mr. Kornhauser, a business broker (informally), and other professionals. (See Ct. Dkt. #289 at ¶8-11). A business broker was not formally engaged, given how much additional cost would be added to the transaction, relative to the proposed purchase price based on Debtor's financial operations. The Trustee has spoken with at least six potential purchasers. *Id.* at ¶10-11). Several potential purchasers have signed a confidentiality agreement in order to obtain

1  additional information about Debtor's assets.

2      10.    After extensive negotiations, on January 30, 2017, the Trustee executed an Asset Purchase and Sale Agreement (the "Purchase Agreement") with Sierra Nevada Bioscience, LLC, a Nevada limited liability company ("Buyer") pursuant to which, among other things, Buyer has offered to purchase substantially all of the Debtor's assets, without warranty and in 'as-in' and 'where-is' condition. The executed Purchase Agreement is attached hereto as **Exhibit 1**.

    10.    The Purchase Agreement provides that Buyer will purchase substantially all the assets owned and used in LEP's business. The transferred assets include personal property, inventory, records, intangible property and good will as identified in the Purchase Agreement, ¶ 2.2. The sale excludes (1) cash on hand or in the bank; (2) accounts receivable incurred through the date of the sale transactions; (3) expressly excluded contracts; and (4) an approximate $6,000 deposit held by shipping vendor Federal Express.

    11.    Buyer will not assume any liabilities except certain contracts assumed in connection with Buyer's acquisition of the assets. The Purchase Agreement further requires the Trustee to deliver assets free and clear of liens and encumbrances. The Purchase Agreement and proposed sale order specifically provide that Buyer will assume no other liabilities.

    12.    The proposed purchase price (the "Purchase Price") under the Purchase Agreement is $500,000, to be paid in cash on or before the closing, designated as five (5) business days after Bankruptcy Court approval. All conditions precedent must be satisfied on or before March 31, 2017, or the Purchase Agreement shall be null and void and without force or effect, with neither the Buyer nor Trustee having any rights, obligations or liabilities under the Purchase Agreement. Allocation of the Purchase Price by asset category for tax purposes is:

| | | |
|---|---|---:|
| (a) | Personal Property | $325,000 |
| (b) | Inventory | $150,000 |
| (c) | Records | $8,333 |
| (d) | Intangible Property | $8,333 |
| (e) | Goodwill | $8,334 |
| | TOTAL PURCHASE PRICE | $500,000 |

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

1915624.1  [17482.1]

13.     The sale includes Debtor's customer lists, which include "personally identifiable information" under 11 U.S.C. § 101(41A). The sale does not trigger the appointment of consumer privacy ombudsman under 11 U.S.C. §§ 332(a) and 363(b)(1)(B) and Rule 6004(g), as Debtor's offering of products did not disclose to an individual customer a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the Debtor. 11 U.S.C. § 363(b)(1).

14.     Buyer's offer under the Purchase Agreement is subject to overbids. Approval contemplates possible overbidding at the time of hearing set to approve the sale by the Bankruptcy Court, with any competing bids to be made in increments of $10,000 to $25,000.

15.     The proposed buyer has discussed agreements with management or key employees regarding future employment. The Trustee has no interest in such agreements, has not been party to those discussions, and has no knowledge of the material terms of any such agreements. L.R. 6004(b)(6)(B).

16.     Any employee claims against Debtor for accrued paid time off will be addressed subsequently in this case under the provisions of the Bankruptcy Code.

### III.     RELIEF REQUESTED

17.     By this Motion, the Trustee requests entry of an order authorizing the sale to Buyer under the terms and conditions set forth in the Purchase Agreement, the proposed form of order attached as **Exhibit 2**. The proposed Sale Order reflects a sale of the Assets to Buyer pursuant to the Purchase Agreement. The actual Sale Order will be tailored to reflect the outcome of the Court's review and possible overbidding at the time of the hearing. In any event, the Sale Order should contain the basic provisions set forth in Exhibit 2 concerning approval of the sale to the successful buyer, if not the Buyer specified herein.

18.     The Trustee requests relief from the fourteen (14) day stay imposed by Fed. R. Bankr. P. 6004(h), in order to allow the sale to close without further delay and minimize any additional costs incurred by this Debtor.

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

## IV. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Sale of Substantially All of The Debtor's Assets Related to Its Business.

Section 363 of the Bankruptcy Code provides authority for a trustee and, through the application of Bankruptcy Code section 1107(a), a debtor in possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The authority to sell assets conferred upon a debtor by Section 363(b) "include[s] a sale of substantially all the assets of an estate." *Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*, 950 F.2d 1492, 1495 (9th Cir. 1991).

A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion. *In re WPRV-TV*, 983 F.2d 336, 340 (1st Cir. 1993); *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1346 (2d Cir. 1985); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983); *Stephens Indus., Inc. v McClung*, 789 F.2d 386, 390-91 (6th Cir. 1986).

Courts in the Ninth Circuit have authorized a sale of all or substantially all of a debtor's assets pursuant to § 363 of the Bankruptcy Code when there is a good business reason for so doing. *See, e.g., In re American Dev. Corp.*, 95 B.R. 735, 739 (Bankr. C.D. Cal. 1989) (among the factors that determines whether a good business reason exists is whether the sale is in the best interests of the estate's creditors); *see also, e.g., Lionel*, 722 F.2d at 1071; *In re Martin*, 91 F.3d 395 (3d Cir. 1996); *In re Titusville Country Club*, 128 B.R. 396 (Bankr. W.D. Pa. 1991).

Courts have also required that the debtor provide reasonable and adequate notice of the sale, that the sale price be fair and reasonable, and that the sale be the result of good faith negotiations with the buyer. *See, e.g., In re Ewell*, 958 F.2d 276 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to 11 U.S.C. § 363 because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code); *In re King-Wilson*, Case No. C-98-1484 MMC, 1998 U.S. Dist. LEXIS 16595 at *11-12 (N.D. Cal. Oct. 13, 1998); *In re Canyon P'ship*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *see also, e.g., In re Abbotts Dairies*, 788 F.2d 143, 147-50 (3d Cir. 1986); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D.

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

1915624.1  [17482.1]

Del. 1996), *aff'd sub nom. Diamond Abrasives Corp. v. Temtechco, Inc. (In re Temtechco, Inc.)*, 141 F.3d 1155 (3d Cir. 1998).

In *Lionel*, the Second Circuit Court of Appeals held that the standard for the proper exercise of the debtor's discretion is a good business reason. *Id.* at 1071. (The Ninth Circuit has followed a similar evaluation. *In re Dant & Russell, Inc.*, 853 F.2d 700, 704-705 (9th Cir. 1988)). The Second Circuit in *Lionel* adopted, in part, the following criteria for evaluating whether a good business reason exists for authorizing a sale of substantially all of the assets of a debtor: (1) the proportionate value of the asset to the estate as a whole; (2) the amount of elapsed time since the filing of the petition; (3) the likelihood that a plan will be proposed and confirmed in the near future; (4) the effect of the proposed disposition on future plans of reorganization; and (5) most importantly, whether the assets to be sold are decreasing or increasing in value. *Id.* The Trustee respectfully submits that the proposed sale of substantially all of the Debtor's assets as set forth herein is entirely consistent with the guidelines set forth in *Lionel* and applicable law. The proposed sale should, therefore, be approved.

The Trustee believes that a prompt sale will maximize the amount the estate and its creditors may realize for the assets. The terms and conditions of the Purchase Agreement are fair and reasonable and in the best interest of the estate and its creditors. Moreover, the Purchase Agreement is the product of marketing and good faith, arms'-length negotiations between the Trustee and Buyer. The Trustee is confident that the successful purchaser that emerges from the process of offering overbids will be the highest and best bid obtainable for these assets.

### B.    Sale Free and Clear

The Trustee requests authorization to sell the Debtor's assets free and clear of liens, interests and encumbrances. Section 363(f) of the Bankruptcy Code authorizes a sale of property under § 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied: (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such

property; (4) such interest is bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Section 363(f) further permits a sale of a debtor's assets free and clear of liens, interests and encumbrances, with such liens, interests and encumbrances attaching to the net proceeds of the sale. *See, e.g., In re Goffena*, 175 B.R. 386, 387 (Bankr. D. Mont. 1994); *In re Granite Lumber Co.*, 63 B.R. 466, 471 (Bankr. D. Mont. 1986) ("the real and personal property of the Debtor's estate was sold by the Trustee pursuant to Section 363(f) of the Code, free and clear of liens, with valid liens to attach to the proceeds of sale."); *see also, e.g., Folger Adam Sec., Inc. v. DeMatteis/ MacGregor, J.V.*, 209 F.3d 252, 259 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of § 363(f) and, therefore, attaches to the proceeds of the sale."); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

Sierra Nevada Bioscience, LLC and any other bidder will reasonably seek the comfort of a determination by the Court that the sale of the assets is free and clear of any liens, interests and encumbrances.

The Trustee is unaware of any additional security interests asserted against the Debtor's assets, other than the following creditors or claimants:

1. <u>Bank of the West</u>. Bank of the West ("BOW") holds a purported secured claim as evidenced by Proof of Claim 18-1, filed on December 31, 2014, and amended on January 22, 2015, Claim 18-2, in the amount of $86,658.42. The claim represents a loan evidenced by a Business Loan Agreement executed by the Debtor on June 16, 2014, in the principal amount of $50,000, mutually amended to the increased amount of $100,000. As collateral for the $100,000 business loan, Debtor gave a blanket security interest in all of its personal property assets. The UCC financing statement allegedly perfecting BOW's security interest was recorded in California, not Nevada, and the Trustee disputes the validity of BOW's status as a secured claim. The Trustee has been making the monthly interest-only payments on the loan as part of the ordinary course of the operation of Debtor's business, as approved by this Court (Ct. Dkt. #180, Stipulated Order,

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

filed Aug. 31, 2015).  The Trustee asserts it may move forward with this sale based (1) the dispute over the validity of the lien, under Section 363(f)(4); or (2) even if the bank does have a lien, the price at which the property is to be sold ($500,000) is greater than the value of the bank's lien against the property (approximately $86,000), under Section 363(f)(3).

2. <u>ThermoFisher Scientific</u>.  The Debtor and ThermoFisher Scientific entered into a Lease Agreement on or about January 16, 2012, for the lease of a Nicolet iS10 Mid Infrared FT-IR Spectrometer system.  The term of the lease is sixty (60) months, commencing January 31, 2012, and last payment is due February 20, 2017.  At the time of the sale of the estate's assets, the financial obligation imposed by the lease will be satisfied and, therefore, has no impact on the proposed sale free and clear of liens.  Further, with the buy-out option available at the payoff and maturity of the lease to be exercised by the Trustee, the estate will own the system free of ThermoFisher Scientific's interest and it will be conveyed to the Buyer.

3. <u>Samuel Kornhauser Claim(s) Asserted in Pending Adversary Proceedings</u>. Samuel Kornhauser is the estate's largest creditor, having asserted an unsecured claim in the amount of $2,592,961.50 (*see*, Proof of Claim 20-1 filed January 9, 2015).  The claim arises out of litigation between the LEP, the Debtor's primary principal, Mr. Block, also a debtor in a Chapter 7 liquidation proceeding, and Mr. Kornhauser, resulting from Mr. Block/LEP's retention of Mr. Kornhauser to perform legal services and was the subject of extensive litigation and the entry of a judgment in favor of Mr. Kornhauser and against both LEP and Mr. Block.  Mr. Kornhauser commenced two adversary proceedings that name LEP:  (1) *Kornhauser v Block (In re Block)*, Adv. Proc. No. 16-05022 (Bankr. D. Nev.); and (2) *Kornhauser v. Block (In re Life Enhancement Products, Inc.)* Adv. Proc. No. 16-05023 (Bankr. D. Nev.).  Those adversaries are stayed pending this sale, pursuant to the Court's orders entered in each adversary.  Mr. Kornhauser does not claim a lien on the property of the Debtor, but he does seek to pierce the corporate veil or otherwise determine that Debtor is an alter ego of its primary principal, Mr. Block, based on his continued efforts to pursue the objection to Mr. Block's exemption claim in Debtor's stock.  If successful, Mr. Block's rights in his shares of Debtor would lose their exemption, and the rights to those

1   shares would belong to the Chapter 7 trustee in his personal bankruptcy case.[1]  Trustee does not

2   believe Section 363(f) applies to Mr. Kornhauser's claims.  But out of an abundance of caution, the

3   sale can proceed based on (1) the bona fide dispute over the validity of any lien, under Section

4   363(f)(4); or (2) Mr. Kornhauser can be compelled in a legal or equitable proceeding to accept a

5   money satisfaction of such interest as the value of the assets otherwise flowing in to Mr. Block's

6   bankruptcy case, under Section 363(f)(5).

   C.   **Sale in Good Faith**

7   Section 363(m) of the Bankruptcy Code provides:  The reversal or modification on appeal

8   of an authorization under subsection (b) and (c) of this section of a sale or lease of property does

9   not affect the validity of a sale or lease under such authorization to an entity that purchased or

10  leased such property in good faith, whether or not such entity knew of the pendency of the appeal,

11  unless such authorization and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m).

12  While the Bankruptcy Code does not define "good faith," the Ninth Circuit held that "Courts

13  generally have followed traditional equitable principles in holding that a good faith purchaser is

    one who buys 'in good faith' and 'for value.'"  *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992).

14  The Trustee negotiated the Purchase Agreement in a fair manner and that due to the

15  open and competitive nature of the sale, the Purchase Agreement finalized with the

16  proposed Buyer (or with some other successful bidder) will, by definition, be the result of

17  arms'-length negotiations in good faith.

18  Furthermore, this transaction does not fall within the state law standards for cases of

    successor liability.  *Village Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 112 P.3d

19  1082 (Nev. 2005) (en banc).  The Nevada Supreme Court elaborated on the most common

20  forms of successor liability, *de facto* merger and mere continuation.  112 P.3d at 1087.

21

22  [1] It may have been suggested in the past that Debtor's assets would flow to Mr. Block's estate.
    However, as noted in Debtor's statement of financial affairs, , Debtor has two equity holders, Mr.
23  Block and Mr. Sutton (Ct. Dkt. #1, SOFA ¶21).  Since this is not a single-member entity, Mr.
    Block's estate may only gain the rights in the shares in Debtor, rather than Debtor's assets.  *See*
24  *In re B&M Land & Livestock, LLC*, 492 B.R. 262 (Bankr. D. Nev. 2013), *citing In re First*
    *Protection, Inc.*, 440 B.R. 821 (9th Cir. BAP 2010).

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

The "*de facto* merger" turns on four factors: continuity of the enterprise; continuity of shareholders; cessation of ordinary business operations; and assumption of obligations for ordinary business operations. *Id.* at 1087-90. Although there may be overlap in the business operations of Debtor and Buyer, the other factors do not support a determination of successor liability. There is no continuity of shareholders. Debtor's statement of financial affairs reflects its ownership by Mr. Block (99.2%) and Allen Sutton (0.8%) (Ct. Dkt. #1, SOFA ¶21). Upon information and belief, the Trustee understands that Buyer's primary member is Michael Nelson, who executed the Purchase Agreement, and that neither Messrs. Block nor Sutton has an interest in Buyer.[1]

The Nevada Supreme Court next looks at whether the seller corporation continued to exist after the sale of assets. Debtor will continue to exist as the Trustee collects accounts receivable, continues to evaluate any potential remaining claims, and puts together a proposal to bring this bankruptcy case to a close. Trustee lacks any knowledge whether Messrs. Block and Sutton will continue to utilize Debtor's corporate form after conclusion of the bankruptcy. But even this limited continuation of the corporate case weighs against successor liability under *Village Builders*.

Finally, the Court considers the assumption of obligations. As noted before, there is no assumption of the Debtor's lease. Additionally, Buyer is not assuming Debtor's contracts with the formulators for the production of its products. As discussed in Mr. Proctor's declaration and detailed in the oral status report on January 18, 2017, Debtor has one written, non-assignable agreement with a formulator, and the other agreements are oral (*See* Ct. Dkt. #289 at ¶20). As the Trustee has made clear, it is up to the Buyer to reach its own agreements with the formulators. There may the assumption of some ordinary course obligations by Buyer, but they are not at the core of this proposed transaction.

---

[1] As noted, Sierra Nevada Bioscience, LLC, has reserved its name with the Nevada Secretary of State but not yet formally organized. The Trustee believes he will be able to present any necessary evidence at the hearing about the difference in ownership between Debtor and Buyer.

1915624.1 [17482.1]

Page 11 of 13

The "mere continuation" turns on two factors:  Only one corporation remains after the sale, and identity of equity holders.  112 P.3d at 1090-92.  As discussed above, Debtor still will remain in existence after the sale, and there are difference in identity of equity holders in Debtor and Buyer.

### D. Rejection of Real Property Lease and Assignment of Assumed Contracts

The Debtor and Scientific Nutritional Formulations ("SNF") are parties to a twenty-five (25) year lease of non-residential real property located at 2555 Business Parkway, Minden, Nevada.  The lease term is June 1, 2012 to May 31, 2037, with monthly rent set over the term of the lease at $7,000 per month.  The then-Debtor in Possession did not move to assume the lease (or move to extend the time to assume or reject the lease) within 120 days after the commencement of the Chapter 11 case.  Therefore, the lease was deemed rejected.  11 U.S.C. § 365(d)(4)(A).

The Trustee has continued to occupy the real property and pay SNF the monthly $7,000 lease obligation.  *See* 11 U.S.C. § 365(d)(3).  The Trustee now seeks to formally reject the lease.  The Trustee is unable to assume and assign the lease, and it is anticipated that Buyer will negotiate its own lease with SNF.  Regardless, the Trustee and Debtor's bankruptcy estate have no use for the building after the close of the sale.

The formal rejection of a lease under § 365 is accomplished by a noticed motion before the Court, subject to this Court approval.  *Alegre v. Michael H. Clement Corp. (In re Michael H. Clement Corp.)*, 446 B.R. 394, 397 n.2 (N.D. Cal. 2011), *citing Pacific Shores Dev. LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065 (9th Cir. 2004).  The Trustee seeks a formal rejection of the lease in order to limit any administrative expenses, *In re Upper Crust, LLC*, 502 B.R. 1 (Bankr. D. Mass. 2013), or rejection claims of SNF against the estate, 11 U.S.C. § 365(h)(1)(A).  Given that the buyer is likely to negotiate its own lease with SNF, there may not be any administrative expenses or rejection claims.  Regardless, the Trustee seeks this formal ruling in order to limit the estate's liability by cutting off those claims at the close of the asset sale.

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

## VI. NOTICE

In accordance with Fed. R. Bankr. P. 2002, the Trustee has given notice of this Sale Motion and the Sale Hearing as follows: (a) serve a copy of this Sale Motion (with exhibits) upon (i) all persons or entities required to be served pursuant to Orders of this Court; (ii) all parties who to the knowledge of the Trustee presently hold or claim a lien upon or security interest in the Assets; (iii) the individuals and entities believed by the Trustee to be potential purchasers; and (iv) the United States Trustee; (b) serve a copy of a general notice of the relief requested by this Sale Motion (the "Sale Notice") by first class mail, upon all creditors and the equity security holders of Debtor.

The Trustee submits that such notice constitutes good and sufficient notice of the Motion, and all proceedings to be held thereon and that no other or further notice need be given.

## VII. CONCLUSION

Based on the foregoing, the Trustee respectfully submits that the relief requested herein is necessary and appropriate, is in the best interests of the Debtor and its estate, and should be granted in all respects. The Trustee respectfully requests that the Court enter the proposed orders granting the relief requested herein and such other and further relief as is just and proper.

DATED: February 7, 2017.            KAEMPFER CROWELL


By: _/s/ Louis M. Bubala III_____
    LOUIS M. BUBALA III, ESQ.
Counsel to Chapter 11 Trustee

1915624.1  [17482.1]